## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEFENDING RIGHTS & DISSENT INC.<br>1325 G Street, NW, Suite 500<br>Washington, D.C. 20005<br><br>PROJECT SOUTH: THE INSTITUTION<br>FOR THE ELIMINATION OF POVERTY<br>AND GENOCIDE, INC.<br>9 Gammon Avenue, SE<br>Atlanta, GA 30315,<br><br>   *Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY,<br>2707 Martin Luther King Jr Avenue, SE<br>Washington, DC 20528,<br><br>FEDERAL BUREAU OF INVESTIGATION<br>935 Pennsylvania Avenue, NW<br>Washington, D.C. 20535-0001,<br><br>   *Defendants*. | Civil Action No. _____ |

### COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Plaintiffs Defending Rights & Dissent and Project South: The Institution for the Elimination of Poverty and Genocide, Inc. (collectively the "Plaintiffs") seek records from Defendants U.S. Department of Homeland Security ("DHS") and the Federal Bureau of Investigation ("FBI") relating to investigations and surveillance of certain advocacy groups opposing the construction and establishment of the Atlanta Public Safety Training Center in College Park, Georgia, commonly referred to as "Cop City."

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202. Each Defendant is improperly withholding agency records duly requested by the Plaintiffs pursuant to the FOIA.

3. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(b) and (e).

4. Because Defendant DHS has failed to comply with the applicable time-limit provisions of the FOIA, Plaintiffs are deemed to have exhausted their administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and are now entitled to judicial action enjoining these agencies from continuing to withhold agency records and ordering the production of agency records improperly withheld.

5. Plaintiffs timely appealed two FOIA request responses from Defendant FBI. In one appeal, DOJ and the FBI affirmed FBI's response to that FOIA request without sufficiently providing their basis for withholding requested documents as required by law. In another appeal, the FBI failed to respond to the Plaintiffs within the timeframe statutorily mandated by 5 U.S.C. § 552(a)(6)(A)(ii). Plaintiffs thus exhausted their administrative remedies and are now entitled to judicial action enjoining the FBI from continuing to withhold agency records and ordering the production of agency records improperly withheld.

## PARTIES

6. Plaintiff Project South: Institute for the Elimination of Poverty and Genocide ("Project South") is a non-profit social justice organization based in Atlanta, Georgia. It was founded in 1986 as the Institute to Eliminate Poverty & Genocide. Its central mission is to help build and strengthen social justice movements in the U.S. South. Its work focuses primarily on

neighborhood organizing to grow community power, movement organizing to grow regional power, and movement support to grow grassroots leadership. Project South engages in bottom-up movement building for social and economic justice by building relationships with organization and advocacy networks across the U.S. South.

7. Plaintiff DEFENDING RIGHTS & DISSENT ("DRAD") is a section 501(c)3 organization that defends the American people's right to know and freedom to act through grassroots mobilization, public education, policy expertise, and advocacy journalism and made the FOIA request at issue in this case for that purpose.

8. Defendant U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS") is a department of the executive branch of the U.S. government headquartered in Washington, D.C. and an agency within the meaning of 5 U.S.C. § 552(f)(1). Upon information and belief, DHS has possession, custody, and control of records responsive to FOIA requests submitted by the Plaintiffs on February 8, 2023 (2023-IAFO-00170) and April 24, 2023 (2023-IAFO-00239).

9. Defendant FBI is a component of the Department of Justice ("DOJ," a department of the executive branch of the U.S. government) headquartered in Washington, D.C. and an agency within the meaning of 5 U.S.C. § 552(f)(1). Upon information and belief, the FBI has possession, custody, and control of records responsive to the FOIA request submitted by the Plaintiffs, which were given Request Nos. 1585154-000, 1585154-001, and 1585159-000.

## BACKGROUND

### *Basis for the Plaintiffs' Interest in the Records Requested*

10. Surveillance and monitoring practices at the FBI, DHS, and/or other federal, state, and local law enforcement entities have a chilling effect on First Amendment-protected activities

of organizers, lawyers, advocates, and members of the public at large who are speaking out or who wish to speak out publicly against certain government policies and projects.

11. One such project is the construction of the Atlanta Public Safety Training Center in College Park, Georgia, commonly referred to as "Cop City." Cop City started as a $90 million project aimed at establishing a training ground for Atlanta's law enforcement and emergency services. From its inception in 2021, the project has been shrouded in significant controversy and faced fierce opposition. *See* J.D. Capelouto, Anjali Huynh, and Wilborn P. Nobles III, *17 hours of comments continue to play before tonight's vote on Atlanta police training center*, ATLANTA J.-CONST. (Sept. 8, 2021), https://www.ajc.com/news/atlanta-news/17-hours-of-public-comment-pour-in-ahead-of-police-training-center-vote/RDE6OHCQRRCZXPQFHFS776CX2I/ (City Council vote on the Cop City project received "1,166 comments from the public — totaling 17 hours . . . played over the course of two days"); Alessandro Marazzi Sassoon and Rick Rojas, *Protester Killed in Firefight at Site of New Atlanta Police Center*, THE NEW YORK TIMES (Jan. 18, 2023), https://www.nytimes.com/2023/01/18/us/atlanta-police-center-protester-killed.html (Cop City protests led to 26-year old protestor being killed by law enforcement and a state trooper being seriously injured).

12. Proposed for construction in South River Forest, located in Metropolitan Atlanta "one of Atlanta's last remaining green spaces," Cop City drew criticism from social and environmental activists alike. Charles Bethea, *The New Fight Over an Old Forest in Atlanta*, THE NEW YORKER (Aug. 3, 2022), https://www.newyorker.com/news/letter-from-the-south/the-new-fight-over-an-old-forest-in-atlanta. Over time, a broad spectrum of opponents to the Cop City project consolidated their efforts into a movement collectively known as "Stop Cop City." *See*

4

*What is Cop City?*, STOP COP CITY, https://stopcop.city/what-is-cop-city/ (last visited Apr. 1, 2025).

13. Controversy over Cop City—which ballooned to a $115 million facility—continues to this day. *See* Dan Raby, *Cop City fight: Court battle over Atlanta Public Safety Center continues as opening date nears*, FOX 5 ATLANTA (Feb. 27, 2025 6:29AM EST), https://www.fox5atlanta.com/news/cop-city-fight-court-battle-over-atlanta-public-safety-center-continues-opening-date-nears.

14. Publicly available information reveals that federal agencies—including DHS—monitored web posts criticizing Cop City. *See* Alleen Brown, *Federal agencies pushed extreme view of Cop City protesters, records show*, THE GUARDIAN (Dec. 6, 2023 12:00 PM EST), https://www.theguardian.com/us-news/2023/dec/06/cop-city-atlanta-georgia-environment-protesters-terrorism ("The ***Department of Homeland Security monitored web posts critical of a proposed police training center in Atlanta known as Cop City*** and shared its findings with state and local law enforcement ahead of a crackdown that left one protester dead and more than 40 others charged with domestic terrorism." (emphasis added)).  As an example, one attorney with the American Civil Liberties Union's National Security Project observed that "***DHS's communications undoubtedly contributed to Georgia authorities' harsh crackdown on the Stop Cop City movement***." *Id.* (emphasis added).

15. DHS has been embroiled in the controversy ensuing from the Cop City project for years.  For example, at least 14 arrest warrants for Stop Cop City protestors' issued from December 13, 2022 to January 18, 2023 describe their charged offense as: "participating in actions as part of Defend the Atlanta Forest (DTAF), ***a group classified by the United States Department of Homeland Security as Domestic Violent Extremists***."   Katherine Bagley,

*DTWarrantsCombined_Redacted*, https://www.documentcloud.org/documents/23587689-dtwarrantscombined_redacted/ (last visited Apr. 1, 2025) (emphasis added). One such warrant is reproduced below. Although the DHS generally denied allegations that it "classifies any specific groups with this term," the Department did not share details on its involvement in the fallout from Cop City. *See* Alleen Brown, *Documents show how 19 'Cop City' activists got charged with terrorism*, GRIST (Jan. 27, 2023) https://grist.org/protest/atlanta-cop-city-terrorism/.

> FILED 12/15/2022 6:01:30 PM   Clerk of Superior Court DeKalb County
> D0293186
> **STATE WARRANT AND MITTIMUS**
> **AFFIDAVIT**
>
> Georgia, DeKalb County
> Personally came ▇▇▇▇▇▇▇ who on oath says that, to the best of his knowledge and belief, ▇▇▇▇▇▇▇ did, in the County aforesaid, commit the offense, of, TO-WIT 16-4-10 Domestic Terrorism in said County, between the hours of 8:00 AM and 3:00 PM on the 13 day of December, 20 22. The place of occurrence of said offense being ▇▇▇▇▇▇▇ DeKalb County, Georgia and against the laws of the State of Georgia. Said offense being described as: **participating in actions as part of Defend the Atlanta Forest (DTAF), a group classified by the United States Department of Homeland Security as Domestic Violent Extremists.** Said group has publicly claimed responsibility for numerous acts while stating their intent was to intimidate employees of the government and private companies into not accepting or completing tasks in and around the site of the Atlanta Police Training Center. These acts have included vandalism at offices and private residences; throwing Molotov cocktails, rocks, and fireworks at uniformed police officers; arson of public buildings, heavy equipment, private buildings, and private vehicles; shooting metal ball bearings at contractors; discharging firearms at critical infrastructure; preventing access to private land; and several other violations of law. These claims of responsibility have been made on websites, social media, and graffiti "tagging". **The accused affirmed their cooperation with DTAF by throwing rocks at fire department and EMS workers, possessing road flares of the same style and type as have been used to set fires on the property, and possessing incendiary devices.**
>
> and thus deponent makes this affidavit that a warrant may issue for his arrest.
>
> ▇▇▇▇▇▇▇ Affiant
> Sworn to and subscribed me before me this 14th day of December, 20 22.
> Judge

*See id.* (highlighting added).

16. Likewise, the FBI has been implicated in the Cop City controversy, including by participating in executing warrants against Stop Cop City protesters. *See* Timothy Pratt, *Georgia police and FBI conduct Swat-style raids on 'Cop City' activists' homes*, THE GUARDIAN (Feb. 10, 2024 10:00 EST), https://www.theguardian.com/us-news/2024/feb/10/georgia-police-fbi-raids-

6

cop-city-activists-atlanta (search warrants "authorized the FBI to confiscate dozens of items from the raided homes – including laptops, cellphones, 'Defend the Atlanta Forest' stickers and posters and personal journals.").

17. The FBI also investigated and surveilled certain Stop Cop City advocates, including at least a group behind the "Chicago Against Cop City" Twitter account (https://x.com/CHIforests), which had posted multiple comments criticizing Georgia's Cop City project. *See* Adam Federman, *How the FBI used 'Cop City' protests to snoop on activists in Chicago*, GRIST (Mar. 23, 2023), https://grist.org/protest/fbi-assessment-cop-city-atlanta-chicago/. Publicly available information suggests the FBI has flagged and opened an "assessment" into Chicago Against Cop City, and possibly other Stop Cop City affiliates. *See id.* Assessments are a type of FBI investigation that can be opened "with little cause and allow for physical surveillance, database searches, and the use of informants to gather intelligence." *Id.*

Ex. A at 1-2 (FBI records on Chicago Against Cop City) (highlighting added).

7

18. The public has a right to understand the motives and activities of government officials and agencies concerning the Cop City controversy and federal agencies' surveillance and monitoring practices of First Amendment-protected activities. Accordingly, the Plaintiffs submitted FOIA requests to DHS and the FBI.

*Plaintiffs' FOIA Requests to DHS*

19. On February 8, 2023, the Plaintiffs submitted a FOIA request to DHS. DHS assigned reference number 2023-IAFO-00170 (the "February 2023 DHS Request"), and deemed DRAD's then-Communications Director, Rebecca (Cody) Bloomfield ("Bloomfield") to be the "Requester." *See* Ex. B (DHS's February 10, 2023 Acknowledgement Letter for 2023-IAFO-00170). The February 2023 DHS Request sought the following:

> "All documents maintained or created by Department of Homeland Security mentioning or referencing:
> - "Stop Cop City"
> - "Defend the Atlanta Forest"
>
> All communications between the Department of Homeland Security, the Georgia Information Sharing and Analysis Center mentioning or referencing:
> - "Stop Cop City"
> - "Defend Atlanta Forest"
>
> All communications between the Department of Homeland Security and the Georgia Bureau of Investigation mentioning or referencing:
> - "Stop Cop City"
> - "Defend Atlanta Forest"

*Id.*

20. In acknowledging the February 2023 DHS Request, the DHS also acknowledged that the obligation to respond to such requests "within 20 business days of receipt of [the] request" pursuant to 6 C.F.R. Part 5 § 5.5(a) of the DHS FOIA regulations, or at most 30 business days upon invoking a "10-day extension . . . in certain circumstances under 6 C.F.R. Part 5 § 5.5(c)."

Ex. B (DHS's February 10, 2023 Acknowledgement Letter for 2023-IAFO-00170); *see also* 6 C.F.R. Part 5 §§ 5.5(c); 5.6(c); 5 U.S.C. §§ 552(a)(6)(A)(i); 552(a)(6)(B)(i).

21. Also, in the same letter, the DHS twice assured the Plaintiffs that it "will make every effort to comply with your request in a timely manner" and that it is "presently processing your request." The Department also stated: "Please be assured that one of the analysts in our office will respond to your request as expeditiously as possible." Ex. B (DHS's February 10, 2023 Acknowledgement Letter for 2023-IAFO-00170) at 1-2.

22. To this day—more than two years after acknowledging the February 2023 DHS Request—DHS has provided no response.

23. On April 24, 2023, the Plaintiffs submitted a similar FOIA request, this time narrowed by timeframe. Once again, DHS assigned reference number 2023-IAFO-00239 (the "April 2023 DHS Request"). *See* Ex. C (DHS's April 24, 2023 Acknowledgement Letter for 2023-IAFO-00239). The April 2023 DHS Request sought the following:

> "Pursuant to the Freedom of Information Act, we request all documents maintained or created by Department of Homeland Security dating February 14, 2023, to April 5, 2023, mentioning or referencing: • "Stop Cop City" • "Defend the Atlanta Forest" • Protests against the planned Atlanta Public Safety Training Center in DeKalb County, Georgia. All communications between the Department of Homeland Security, the Georgia Information Sharing and Analysis Center dating February 14, 2023, to April 5, 2023, mentioning or referencing: • "Stop Cop City" • "Defend the Atlanta Forest" • Protests against the planned Atlanta Public Safety Training Center in DeKalb County, Georgia. All communications between the Department of Homeland Security and the Georgia Bureau of Investigation dating February 14, 2023, to April 5, 2023, mentioning or referencing: • "Stop Cop City" • "Defend the Atlanta Forest" • Protests against the planned Atlanta Public Safety Training Center in DeKalb County, Georgia. Any part of this request is separable."

*Id.*

24. DHS acknowledged receipt on the same day. *See id.* The April 2023 DHS Request acknowledgement letter also cited 6 C.F.R. Part 5 §§ 5.5(a), (c) of the DHS FOIA regulations, and self-imposed a deadline of at most 30 business days to respond. DHS assured Plaintiffs once again

9

that it "will make every effort to comply with your request in a timely manner," it is "presently processing your request," and stated: "Please be assured that one of the analysts in our office will respond to your request as expeditiously as possible." *Id.* at 1-2.  Again, DHS never responded.

25. DHS's 30-day statutory deadline to respond to the February 2023 DHS Request passed.  Then, the deadline passed more than seven times over with no update.  On September 19, 2023—223 days after the 2023 DHS Request and 193 days after the DHS's statutory deadline—DRAD's Bloomfield contacted DHS's point of contact (i&afoia@hq.dhs.gov) requesting an update on an estimated completion date.



Ex. D.

26. DHS never responded to DRAD's September 19, 2023 inquiry.

27. Finally, on January 4, 2024, one of Plaintiffs' undersigned counsel sent DHS a letter memorializing the Department's failure to timely respond to the February 2023 Request and April 2023 DHS Request within the mandated statutory deadline.  *See* Ex. E.  The letter further noted the DHS's failure to respond to Bloomfield's attempts to obtain an update and requested "an

estimate of when DHS expects to respond to these Requests" to "avoid[ ] unnecessary litigation on this matter." *Id.* at 2.

28. DHS has never responded to counsel's January 4, 2024 letter (Ex. E).

29. Plaintiffs exhausted all administrative remedies against DHS. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) ("A requester is considered to have constructively exhausted administrative remedies and may seek judicial review immediately if ... the agency fails to answer the request within twenty days."); *Wash. Lawyers' Cmte. for Civil Rights and Urban Affairs v. U.S. Dep't. of Justice*, No. 23-1328, 2024 WL 1050498, at *7 (D. D.C. Mar. 10, 2024) (explaining that "under the FOIA . . . when an agency fails to respond to a request in a timely manner, a requester 'shall be deemed to have exhausted his administrative remedies with respect to such request,' 5 U.S.C. § 552(a)(6)(C), and may immediately seek judicial review in federal district court").

### *Plaintiffs' FOIA Requests to the FBI*

30. Plaintiffs Project South and/or DRAD also pursued FOIA requests to the FBI, including regarding FBI surveillance on activists, organizers, and other members of the public at large opposing Cop City. Plaintiffs Project South and/or DRAD made specific and time-limited requests, seeking materials on Stop Cop City, Defend the Atlanta Forest, and Atlanta Public Safety Training Center, including as provided below:

| Request Number | Date Acknowledged |
|---|---|
| 1585159-000 | March 9, 2023 |
| 1585154-000 | March 23, 2023 |
| 1585154-001 | April 17, 2023 |

31. After acknowledging receipt, upon information and belief. the FBI provided responses the above-referenced requests, as provided below:

11

| Request Number | Date Responded | Response |
|---|---|---|
| 1585154-000 | March 23, 2023 | "FBI has completed its search for records subject to the Freedom of Information Act (FOIA) that are responsive to your request. The enclosed 28 pages of records were determined to be responsive to your subject and were previously processed and released." Ex. F at 1. |
| 1585154-001 | May 23, 2023 | "The material you requested is located in an investigative file which is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A). . . . The records responsive to your request are law enforcement records; there is a pending or prospective law enforcement proceeding relevant to these responsive records, and release of the information could reasonably be expected to interfere with enforcement proceedings. Therefore, your request is being administratively closed." Ex. G at 1. |
| 1585159-000 | July 11, 2023<br>April 4, 2024 | "Records responsive to your request will be made available in the FBI's electronic FOIA Library (The Vault) on the FBI's public website, http://vault.fbi.gov. You will be notified when releases are available." Ex. H (July 11, 2023 letter).<br><br>"By letter dated July 11, 2023 you were advised that records responsive to your request will be made available in the FBI's electronic FOIA Library (The Vault) on the FBI's public website, http://vault.fbi.gov. You were advised that you would be notified when releases are available. Material consisting of 6 pages has been reviewed pursuant to Title 5, U.S. Code, Section 552, and this material is being withheld in its entirety by the FBI pursuant to subsections (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E)." Ex. I (April 4, 2024 letter). |

32. Following the FBI's responses, Plaintiffs timely pursued administrative appeals for these requests: 1585154-000/1585154-001 (the "Stop Cop City Appeal") and 1585159-000 (the "Defend the Atlanta Forest Appeal"). *See* Ex. J (appeal of Request No. 1585154-000/1585154-001); Ex. M (appeal of Request No. 1585159-000). DOJ acknowledged receipt of these appeals on August 29, 2023 (*see* Ex. K) and July 2, 2024 (*see* Ex. L), respectively:

| Request No(s). | Appeal No. | Date Acknowledged | Subject |
|---|---|---|---|
| 1585154-000 / 1585154-001 | A-2023-01909 | August 29, 2023 | Stop Cop City |
| 1585159-000 | A-2024-02014 | July 2, 2024 | Defend the Atlanta Forest |

33. The Stop Cop City Appeal and Defend the Atlanta Forest Appeal played out differently. Plaintiffs seek relief on both.

34. For the *Stop Cop City Appeal*, the Plaintiffs appealed the FBI's reliance on statutory disclosure exemptions under 5 U.S.C. § 552(b)(7)(A) (refusing to release "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings . . ."). Plaintiffs' appeal also noted that the FBI's modest 14-page production on March 23, 2023 only pertained to Chicago, but not Atlanta or Georgia. *See* Ex. J.

35. Plaintiffs requested "the FBI [to] conduct a broader search for responsive records" outside the Midwest, citing DOJ's 2004 FOIA guide. That guide provides that the FBI's claimed exemption "requires a two-step analysis focusing on (1) whether a law enforcement proceeding is pending or prospective, and (2) whether release of information about it could reasonably be expected to cause some articulable harm" where "courts have held that the mere pendency of enforcement proceedings is an inadequate basis for the invocation of Exemption 7(A); the government must also establish that some distinct harm could reasonably be expected to result if the record or information requested were disclosed." *Id.* Noting the FBI's failure to identify a clear nexus between the "disclosure of every Stop Cop City file" and "articulable harm," the Plaintiffs pointed the Bureau to files such as "general advisory documents, information about

13

events in which no illegal conduct took place, and/or other materials for which disclosure would not impact investigation" which should have been released. *Id.*

36. In response, DOJ reiterated its reliance on 5 U.S.C. § 552(b)(7)(A) and withheld requested materials again. *See* Ex. N at 1. Specifically, in a October 17, 2023 response letter, DOJ vaguely maintained that the Plaintiff's request comprises "records of information compiled for law enforcement purposes" which "could be reasonably be expected to interfere with enforcement proceedings," but failed to substantiate its claims or otherwise address Plaintiffs' arguments on appeal. *Id*. at 1. Instead, DOJ advised that "the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B)" if the Plaintiffs "are dissatisfied with my action on your appeal." *Id.* at 2.

37. DOJ's and the FBI's responses to the Stop Cop City Appeal were deficient for at least two reasons. First, the FBI does not appear to have exercised all reasonable efforts to ensure that it included what was requested in the search conducted. *See Davis v. Dep't of Justice*, 460 F.3d 92, 95, 103 (D.C. Cir. 2006). As an initial matter, the FBI's responses to the Plaintiffs' FOIA requests on Stop Cop City records failed to indicate which databases were searched, what agency records those databases contain, or what search terms were used. The FBI failed to provide information that would enable the Plaintiffs to assess or challenge the adequacy of the search. Even on appeal, DOJ and the FBI did not provide any information from which one could assess whether reasonable efforts were exercised in response to the requests. Moreover, the FBI (and DHS) possess at least some non-exempt materials response to Plaintiffs' FOIA request, as confirmed by publicly available records produced by the Atlanta Police Department ("APD") in response a Georgia Open Records Act request. *See* Brennan Center for Justice, *Atlanta Police Department Social Media Surveillance Documents* (July 30, 2024),

https://www.brennancenter.org/our-work/research-reports/atlanta-police-department-social-media-surveillance-documents (containing bulletins concerning Stop Cop City emailed from APD to contacts at DHS and the FBI, among other agencies).

38. Second, DOJ's and the FBI's responses failed to provide a reasonably detailed explanation of why certain records may have been exempted from disclosure. *See Halpern v. FBI*, 181 F.3d 279, 295 (2d Cir. 1999). The FBI only provided conclusory boilerplate statements that certain FOIA exemptions may apply. Further, 5 U.S.C. § 552(c) requires that records be produced, in redacted form if necessary, and that agencies indicate what portions they believe are exempted and why. The FBI failed to meet this standard not only in its initial responses, but also on appeal. And DOJ provided no explanation whatsoever.

39. With regards to the ***Defend the Atlanta Forest Appeal***, DOJ and the FBI failed to provide ***any*** substantive response. Prior to the appeal, the FBI stated on July 11, 2023, that it would release some records responsive to the Plaintiffs' FOIA request. *See* Ex. H. But, on April 4, 2024, the FBI changed its position, stating that it had reviewed 6 pages of material and invoked statutory exemptions pursuant to 5 U.S.C. §§ 552(b)(6), (b)(7)(A),(b)(7)(C), (b)(7)(D), and (b)(7)(E). *See* Ex. I. Plaintiffs appealed.

40. The only correspondence from the DOJ and FBI ever since the Plaintiffs initiated the administration appeal is a single letter from July 2, 2024 acknowledging receipt and assigning an appeal number. *See* Ex. L. Despite assuring the Plaintiffs that the DOJ and FBI "will notify you of the decision on your appeal as soon as we can," neither the DOJ nor the FBI provided the Plaintiffs any update whatsoever since. *Id.* at 1. As of the filing of this Complaint, the FBI has not provided any substantive response with respect to this appeal. *See* Ex. O (screenshot from DOJ FOIA System for Tracking Appeals and Requests portal ("STAR")).

41. DOJ's and FBI's baseless and unreasonable delay violates the plain language of 5 U.S.C. § 552(a)(6)(A)(ii), which requires agencies to "make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal." *See also OIP Guidance: Adjudicating Administrative Appeals Under the FOIA*, DEPARTMENT OF JUSTICE, https://www.justice.gov/oip/oip-guidance/Adjudicating%20Administrative%20Appeals%20Under%20the%20FOIA (last visited Apr. 3, 2025) ("Absent 'unusual circumstances,' the FOIA provides that agencies should make a determination with respect to an appeal within twenty working-days of its receipt by the agency. 5 U.S.C. § 552(a)(6)(A)(ii). If a denial of the request for records is upheld either in whole or in part on appeal, the FOIA requires the agency to notify the requester of the FOIA's provisions for judicial review. *Id.*

42. Facing a deficient response in the Stop Cop City Appeal and total unresponsiveness in the Defend the Atlanta Forest Appeal, the Plaintiffs have exhausted all administrative remedies against the FBI. *See Wash. Lawyers' Cmte.*, 2024 WL 1050498, at *7; *Rossotti*, 326 F.3d at 1310. This Complaint follows.

### Plaintiffs' Claim for Relief

*(Wrongful Withholding of Records Responsive to Plaintiffs' FOIA Requests)*

43. Plaintiffs repeat and re-allege the foregoing paragraphs.

44. In their February 8, 2023 (2023-IAFO-00170) and April 24, 2023 (2023-IAFO-00239) FOIA requests, the Plaintiffs properly asked for records within the possession, custody, and control of Defendant DHS.

45. In the Request Nos. 1585154-000, 1585154-001, and (1585159-000), Plaintiffs property asked for records within the possession, custody, and control of Defendants DHS and FBI.

46. Defendants are agencies subject to and within the meaning of FOIA and must therefore make reasonable efforts to search for requested records.

47. Defendants failed to conduct an adequate search in response to Plaintiffs' FOIA requests.

48. On information and belief, these agencies are wrongfully withholding non-exempt records responsive to these FOIA requests.

49. By failing to timely release all requested records in full to the Plaintiffs, Defendants DHS and FBI are in violation of the FOIA.

50. Plaintiffs are therefore entitled to injunctive and declaratory relief requiring immediate processing and disclosure of the requested records.

## **Requested Relief**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Order Defendants DHS and FBI to immediately and fully process the Plaintiffs' FOIA requests and disclose all non-exempt records to the Plaintiffs;

2. Issue a declaration that the Plaintiffs are entitled to immediate processing and disclosure of the requested records;

3. Provide for expeditious proceedings in this action;

4. Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

5. Award the Plaintiffs their costs and reasonable attorneys' fees in this action; and

6. Grant such other relief as the Court may deem just and proper.

Dated this 9th day of May, 2025

                                 **FISH & RICHARDSON P.C.**

                                 By: */s/ Daniel A. Tishman*
                                      Daniel A. Tishman
                                      D.C. Bar No. 1013923
                                      tishman@fr.com
                                      1000 Maine Avenue, S.W., Suite 1000
                                      Washington, D.C. 20024
                                      (202) 783-5070 (Telephone)
                                      (202) 783-2331 (Facsimile)

                                      Noah C. Graubart*
                                      Georgia Bar No. 141862
                                      graubart@fr.com
                                      Charles N. Reese, Jr.*
                                      Georgia Bar No. 455637
                                      creese@fr.com
                                      Peter Hong*
                                      Georgia Bar No. 365188
                                      hong@fr.com
                                      1180 Peachtree St NE, 21st Floor
                                      Atlanta, GA 30309
                                      Tel: (404) 892-5005

                                      **Pro hac vice* motions forthcoming

                                  **COUNSEL FOR PLAINTIFFS DEFENDING RIGHTS & DISSENT INC. AND PROJECT SOUTH: THE INSTITUTION FOR THE ELIMINATION OF POVERTY AND GENOCIDE, INC.**